No. 13,891.

City of New Orleans vs. Hugo H. Fredericks.

### Syllabus.

#### On Motion to Dismiss Appeal.

Where, in an action for the recovery of real estate, the defendant, by his answer, denies the asserted right of the plaintiff, and, in the course of the trial, exhibits a title in himself, and at the same time disclaims title in the land, but insists upon his ownership of the buildings situated thereon, and there is judgment rejecting plaintiff's demand and recognizing defendant as the

owner of the buildings, the value of the land is not thereby eliminated for the purposes of appeal, and a motion to dismiss, predicated upon that theory, will not prevail.

### ON THE MERITS.

It is inadmissible that a political corporation exercising governmental functions should be dispossessed, by means of a tax suit against an individual, of a public work, not upon private property, constructed at the common expense, for the protection of the lives and property of its citizens. And it is a matter of no importance for the purposes of such a question whether, as between such corporation and other governmental authority, such work has, or has not, been properly located.

APPEAL from the civil district court, parish of Orleans—*King, J.*

*Frank B. Thomas,* assistant city attorney (*James J. McLaughlin,* of counsel), for plaintiff, appellant.

*Charles Louque,* for defendant, appellee.

The opinion of the court was delivered by

MONROE, J. The city of New Orleans sues to recover certain real estate described as "A certain lot of ground designated by the number 9 and situated in the seventh municipal district of the city of New Orleans, in the tract of land known as West End, and fronting on the revetment levee in the said seventh district, and measuring seventy-five feet front by one hundred feet in depth between parallel lines." The petition alleges that the property in question is worth $2500, and that the petitioner has been the owner in possession for more than ten years; that notwithstanding the fact that it is public property not liable to taxation, it was erroneously assessed in the name of Mrs. Mary Mullen, who occupied as lessee, under a lease transferred to her by M. J. Carroll, who had leased from petitioner.

That said property was sold under the erroneous assessment aforesaid about August 7, 1896, to Hugo Fredericks, who was put in possession by judgment of the civil district court in June, 1897, as against said lessee, Mrs. Mullen, and with reservation of petitioner's rights There is a prayer for citation of the board of assessors, of Hugo Fredericks, of Mrs. Mullen and her husband, and of the state tax collector, and for judgment annulling the assessment, sale, and judgment mentioned, and decreeing petitioner to be the owner of said property and putting it in possession of the same.

The defendant, Fredericks, excepted on the grounds that the peti-

tion failed to disclose the title of the city, and that the suit, being one to annul a judgment, should have been assigned to that division of the court by which the judgment was rendered, and the latter exception having been maintained, the case was transferred to that division. The defendant, Fredericks, thereupon answered, denying that the city had any title and denying its right to annul a judgment to which it was not a party; and the other defendants pleaded the general issue. In the course of the trial on the merits, the city filed an amended petition alleging " that her title to this property was acquired by reason of the fact that the said property is a part of the bottom of Lake Pontchartrain, having been raised to the surface in the construction of the protection levee; that it is far beyond the shore line of the said lake, and, being part of a public levee, constructed for public purposes under the supervision of the city and at her cost, the said levee being built to protect the city; that all the bottom of the lake which was raised to construct the levee is the property of the city and said lot forms a portion of said levee, the city having no written title thereto, except in so far as the creation of the levee board and the drainage commission may be considered as such."

The concluding paragraphs of the reasons assigned for judgment by the judge *a quo* read as follows: "The city has shown no title to the property described in the petition. The defendant has shown a deed of sale to the buildings, not to the lands. Defendant's counsel, in argument, disclaims ownership of the land. Upon filing a written disclaimer, judgment is rendered in favor of defendant for the buildings only, reserving the rights of the Drainage Board, the Orleans Levee Board, and the city, if any she has, to bring suit and have it decided whether or not the building is a nuisance."

The disclaimer referred to was duly filed, and reads in part: "On motion of Charles Louque, attorney for defendant, and on suggesting to the court that the defendant disclaims ownership of the lot sued on for the reasons that the same is the bottom of Lake Pontchartrain, and is not, as such susceptible of private ownership," etc. And thereupon judgment was entered, rejecting plaintiff's demand at its costs, and recognizing the defendant, Fredericks, as the owner of the improvements on the lot in question. From this judgment the plaintiff has appealed, and the said defendant moves to dismiss the appeal on the ground that the building of which he was recognized to be the owner was never worth as much as $1000, that it has been destroyed by fire,

and that there is nothing left in contestation. This motion is supported by affidavits, filed in this court, showing the value of the building to have been as stated in the motion, though they do not refer to its destruction by fire, or otherwise. The city, upon the other hand, has filed affidavits to the effect that the property *claimed in the petition* is worth $2500.

It was shown by the evidence adduced upon the trial that, between 1872 and 1874, the city of New Orleans, at its own expense, and with material obtained from the bottom of the lake, built a levee, something over 2000 feet in length, extended westward from a point near the mouth of the new canal, and at a distance of 800 feet out from the southern shore of Lake Pontchartrain, the idea at the time being to extend the work and to do certain other work with a view to the drainage of the city and to its protection from inundation. The scheme, as a whole, was abandoned and little or nothing more was done than the building of the levee in question, which is not connected with the shore at either end, and is therefore washed on both sides by the waters of the lake. There is no doubt, however, that this levee has been under the exclusive control and administration of the city since it was built, and in the exercise of that control, the city appears to have divided its two edges into lots, with its crown as a roadway between them, and the water, either of the lake, proper, or of the channel between the levee and the shore, in their rear; the particular lot here in controversy being upon the inner edge of the levee and designated as lot No. 9. In May, 1883, the city leased this lot to M. J. Carroll for twenty-five years for the sum of $100 and for the further consideration that Carroll should cause to be erected thereon a building and other improvements, according to a plan to be furnished by the city surveyor, which building, etc., were to become the property of the city at the expiration of the lease. We infer from the evidence that Carroll erected the building as contemplated by his lease, and he appears to have sold and transferred the lease and the building to Miss Minnie Wilson, who, in turn, sold and transferred to Mrs. Mary Mullen. In June, 1896, the property, that is to say, the lot as heretofore described, was sold to Hugo H. Fredericks by the state tax collector as property which had been adjudicated to the state for the state tax of 1890, and, later in the same year, Fredericks obtained a writ of possession, the execution of which was enjoined by Mrs. Mullen, who claimed to be in possession as the transferree of the lease to Carroll. There was judgment

against her, which appears to have been affirmed by the Court of Appeal. Thereafter, in May, 1897, the city of New Orleans filed suit alleging ownership and possession and praying that it be protected by injunction, and its demands were also rejected with a reservation of its "rights, in a petitory action or in a proper proceeding, to set up any title" it might have. Following this, Denis Casey, claiming as sublessee under James Mullen, at a rental of $150 per year, applied for an injunction to maintain him in possession, and the same was denied, and Fredericks was, presumably, put in possession. The city thereupon, in March, 1898, brought the present action.

## ON THE MOTION TO DISMISS THE APPEAL.

The facts disclosed do not justify the dismissal of the appeal, since the allegations of the petition and the affidavit in support thereof to the effect that the property claimed, i. e., the building and lot, is worth $2500, are not overborne by the affidavits filed on behalf of the defendant as to the value of the building alone. The fact that the defendant, in the course of the trial, disclaimed title to the lot, cannot, for the purposes of the appeal, affect the question of the value in dispute in as much as no judgment was rendered and no action was taken by the city whereby its claim was curtailed, of its original proportions. "That," as has been said by this court in a somewhat similar case, "was only accomplished by the final judgment," from which the appeal has been taken. Blache vs. Aleix, 15 Ann. 50. The motion to dismiss is, therefore, denied.

## ON THE MERITS.

The defendant, who, claims under a tax title based upon an assessment made by the Board of Assessors, and under a sale made by the state tax collector, for the parish of Orleans, is hardly in a position to deny, whatever may be the fact, that the property in question is within the limits of this parish, and hence within the limits of the city of New Orleans. The city acted either upon that hypothesis or upon some other basis of actual, or assumed, right, when it built and took possession of the public work of which that property formed, or was made, part. Whether the city required the permission of any other authority to build a levee in Lake Pontchartrain, to protect itself from inundation, or whether it did not, is a question of no importance

here.  The facts are, that the levee was built for the purposes stated; that it was a public work in the actual possession of the city authorities, as such, and that it was not subject to taxation.  Hence, there could have been no valid sale of the lot 9 for taxes.  But the original lessee of the lot had an interest in the buildings thereon upon which he was liable for assessment, as upon any other property, and when the original lessee transferred that interest, it became liable to assessment as the property of the transferree, and to sale for the tax assessed, and there was no reason why the defendant Fredericks, should not have become the owner as a purchaser at such sale.  This was, however, a matter which did not particularly concern the city, and it is only in so far as the tax deed purports to convey the land, and in so far as there has been a denial of the city's authority as the administrator of a public work, if not as owner and lessor, that it has any right to complain, since the purchaser of the building acquired no greater rights as to the land than the owner of the building had possessed under his contract with the city.  To the extent stated, however, the city has a right to complain.  Nor do we think that, in determining as to the merits of the complaint which has been made, it is necessary that either the Levee Board, the Drainage Commission, or any other authority need be made a party to the litigation.  Those who are not made parties will not be affected by the judgment.  It is sufficient for present purposes that we take the case as we find it.  And, so taking it, we hold it to be inadmissible that a political corporation exercising governmental functions should be dispossessed, by means of a tax suit against an individual, of a public work, not on private property, constructed at the common expense for the protection of the lives and property of its citizens.

It is, therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed in so far as it rejects the demand of the plaintiff to be put in possession of "lot number 9, situated in the seventh municipal district of the city of New Orleans, in the tract of land known as West End, and fronting on revetment levee in said district and measuring seventy-five feet front by one hundred feet in depth between parallel lines," and that there now be judgment in favor of the plaintiff, annulling and avoiding the adjudication of said lot, as made by Blayney T. Walshe, state tax collector, to Hugo H. Fredericks, upon the 10th day of June, 1896.  And it is further ordered that the plaintiff be put in possession of said lot,

subject to the rights of the defendant, the said Hugo H. Fredericks, as owner of the buildings theron with respect to which and to all other matters, save costs, said judgment is affirmed. It is further ordered and adjudged that said defendant pay the costs in both courts.